UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br>v.<br><br>MARKO LEOPARD,<br><br>              Defendant. | Case No. 2:17-cr-00306-JCM-PAL<br><br>**REPORT OF FINDINGS AND RECOMMENDATION**<br><br>(Mot Dismiss – ECF No. 471) |
|---|---|

Before the court is defendant Marko Leopard's ("Leopard") Motion to Dismiss Count One as Unconstitutionally Overbroad and/or Vague (ECF No. 471), which was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4 of the Local Rules of Practice. The court has considered the motion, the government's Opposition (ECF No. 502), and Leopard's Reply (ECF No. 519). Defendants John Telusma, Frederick Thomas, Valerian Chiochiu, Aldo Ymeraj, Pius Wilson, and Sergey Medvedev also filed Motions for Joinder (ECF Nos. 478, 479, 480, 481, 482, 487).[1]

## BACKGROUND

**I. THE INFRAUD INDICTMENT**

Defendant Marko Leopard (a.k.a. "Leopardmk") and 34 co-defendants are charged in a Second Superseding Indictment (ECF No. 303) ("Infraud indictment") returned January 30, 2018.[2] This case arises from allegations that the defendants operated a criminal enterprise known as "Infraud" in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18

---

[1] Defendant Pius Wilson filed an omnibus Motion for Joinder (ECF No. 481) seeking to adopt the motions of his co-defendants to the extent any motion is applicable to him. The current motion involves a legal question about the racketeering conspiracy count, which also charges Wilson. The court grants Wilson's joinder motion as to those arguments.

[2] A total of 36 defendants were named in the Infraud indictment. One defendant has been dismissed.

U.S.C. §§ 1961–1968. Defendants allegedly engaged in identity theft and financial fraud with racketeering acts that include money laundering, trafficking in stolen means of identification; trafficking in, production and use of counterfeit identification; identity theft; trafficking in, production and use of unauthorized and counterfeit access devices; bank fraud; and wire fraud, as well as services in connection with these acts. ECF No. 303 at 6, ¶ 1.

Mr. Leopard is charged in count one with RICO conspiracy in violation of 18 U.S.C. § 1962(d).[3] Count one alleges the defendants were employed by and associated with the Infraud "enterprise" and knowingly conspired to violate § 1962(c) by participating in a pattern of racketeering activity consisting of multiple acts indictable under 18 U.S.C. § 1028 (fraud and related activity in connection with identification documents, authentication features, and information), § 1029 (access device fraud), § 1343 (fraud by wire, radio, or television), § 1344 (bank fraud), and § 1543 (forgery or false use of passport). ECF No. 303 at 24, ¶ 12.

With regard to overt racketeering acts, Leopard is accused as follows:

> On or about October 29, 2013, **Leopard [29]** began handling the website traffic for an AVS selling compromised credit card dumps, which was owned by **Unindicted Co-conspirator W.**
>
> On or about November 3, 2013, **Leopard [29]** began hosting the website "tonymontana.cc," which belonged to Infraud member **Doe #1 [26]** and served as an outlet for **Doe #1 [26]** to sell dumps to Infraud members and associates.

*Id.* at 35, ¶¶ 14.88–14.89.

**II.    THE MOTION TO DISMISS**

Mr. Leopard's motion argues that count one is unconstitutionally overbroad and/or vague because the charge causes individuals to refrain from free speech. He claims the Infraud indictment is overbroad because its application of § 1962(d) creates an impermissible risk of suppression of ideas by proscribing Leopard's alleged activities: (1) handling the website traffic owned by another unindicted co-conspirator; and (2) hosting the website "tonymontana.cc." *Id.* at 5 (citing ECF No. 303 at 35). The acts of handling a website and/or hosting a website are constitutionally protected conduct; thus, the Infraud indictment impermissibly suppresses the

---

[3] Counts two through nine allege possession of 15 or more counterfeit and unauthorized access devises in violation of 18 U.S.C. § 1029(a)(3) and (c)(1)(A)(I), along with 18 U.S.C. § 2. ECF No. 303 at 39–42.

expression of ideas. The motion further argues that Infraud indictment's application of § 1962(d) impermissibly regulates Mr. Leopard's conduct rather than his speech. He claims that § 1962(d) reaches a substantial amount of protected conduct, *i.e.*, handling and/or hosting websites for other people. The RICO conspiracy statute is overbroad because a person such as Leopard can be convicted for receiving any income and/or engaging conduct in the course of a web-hosting business. As applied to Leopard, § 1962(d) impermissibly covers his protected speech activity in handling website traffic and/or hosting websites for others.

Additionally, the motion argues that § 1962(d) is "so vague and standardless as to leave the public uncertain as to the conduct it prohibits." *Id.* at 8. Leopard claims § 1962(d) is so indefinite that it encourages "arbitrary and erratic arrests and convictions." *Id.* (quoting *Colautti v. Franklin*, 439 U.S. at 390 (1979)). Because this case involves First Amendment freedoms, the motion asserts that the court must evaluate § 1962(d) on an as-applied basis rather than a factual basis. As applied, count one must be dismissed.

In its response (ECF No. 502), the government claims the motion is conclusory and fails to cite any cases supporting Leopard's position that § 1962(d) is unconstitutionally overbroad. The government points out that "the Supreme Court has specifically considered and denied an overbreadth challenge to the RICO statute." *Id.* at 11 (quoting *Alexander v. United States*, 509 U.S. 544, 555 (1993)). The response maintains that Leopard cannot meet the stringent standard for a successful facial overbreadth challenge, and his motion fails to allege a single application of § 1962(d) that he believes to be impermissible, other than to his own conduct.

The government contends that Leopard's "as-applied" overbreadth challenge also fails. The motion does not identify any successful challenge to § 1962(d) on this basis, nor is the government aware of one. Rather, the Supreme Court and the Ninth Circuit have rejected as-applied First Amendment challenges to state and federal RICO statutes. *Id.* at 12 (citing *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 57–60 (1989) (Indiana's RICO statute, patterned after the federal statute, was not unconstitutional as applied to obscenity predicate offenses); *United States v. Freeman*, 6 F.3d 586, 597–98 (9th Cir. 1993) (rejecting defendant's claim that RICO's application to a state legislative bribery scheme chilled First Amendment rights regarding the

solicitation of campaign contributions); *United States v. Yarbrough*, 852 F.2d 1522, 1540–41 (9th Cir. 1988) (finding white supremacist's RICO conspiracy conviction did not violate his First Amendment rights of political advocacy and association)).

The government asserts that Leopard's as-applied overbreadth challenge is premature because § 1962(d) is facially constitutional and the fact-dependent nature of an as-applied challenge militates in favor of developing those facts at trial before the court considers dismissal. Based on the facts alleged in the indictment, the as-applied challenge is meritless. Although handling website traffic may have First Amendment implications in certain instances, Leopard's alleged handling web traffic for automated vending sites selling "dumps" of compromised credit cards does not implicate the First Amendment. The government argues that an automated vending site is "not a vehicle for the expression of ideas, but a vehicle purely for fraud." Resp. at 13. The government therefore urges the court to reject Leopard's as-applied overbreadth challenge.

In addition, the response contends that RICO is not unconstitutionally vague. All ten courts of appeals to address the issue have rejected the RICO vagueness argument. *Id.* at 14 (collecting cases, including three from the Ninth Circuit). The government further asserts that Leopard fails to articulate what aspect of the RICO statute is vague. Because he has not articulated any grounds for an as-applied vagueness challenge (and such a challenge is premature at this stage), the court should deny motion to dismiss on vagueness grounds.

In his Reply (ECF No. 519), Leopard argues that case law on the application of RICO to cybercrimes is sparse because cybercrime cases are a relatively new type of prosecution. Because *Alexander* involved physical stores selling sexually explicit materials, not "cyberfraud," the case is distinguishable. Leopard maintains that count one is unconstitutionally overbroad, and should be dismissed, because there is no speech or activity that is not swept up in § 1962(d)'s application. As-applied, § 1962(d) impermissibly covers Leopard's protected free speech activity in handling website traffic and/or hosting websites for others. Leopard also claims the RICO statute is vague in its definitions of "conduct," "enterprise," and "pattern of racketeering activity." Handling and/or hosting websites for other people does not fit within the definitions of "conduct," "enterprise" or "pattern of racketeering activity." Although the government urges the court to

defer this issue until trial, Leopard asserts "there is not likely to be additional information that would implicate" him. Reply at 5. Accordingly, Leopard asks the court to grant his motion.

## DISCUSSION

### I.  APPLICABLE LEGAL STANDARDS

#### A. Motion to Dismiss

Pursuant to Rule 12 Federal Rules of Criminal Procedure,[4] a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Rule 12(b)(3) specifies the motions which must be made before trial. Among them is a motion to dismiss for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(v). "A motion to dismiss is generally capable of determination before trial if it involves questions of law rather than fact." *United States v. Kelly*, 874 F.3d 1037, 1046 (9th Cir. 2017).

In ruling on a pretrial motion to dismiss, "the district court is bound by the four corners of the indictment." *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014); *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). The court "cannot consider evidence that does not appear on the face of the indictment." *Kelly*, 874 F.3d at 1046 (citing *Lyle*, 742 F.3d at 436; *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996)). Accordingly, a defendant is not entitled to a pretrial evidentiary hearing to obtain a preview of the government's evidence and an opportunity to cross-examine its witnesses. *Jensen*, 93 F.3d at 669 ("A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence.").

#### B. The First Amendment

It is well established that the First Amendment does not prohibit the government from criminalizing speech that is integral to criminal conduct. *United States v. Osinger*, 753 F.3d 939, 946 (9th Cir. 2014). "The right to speak is not unlimited," and the degree of scrutiny courts apply to "challenged speech varies depending on the circumstances and the type of speech at issue." *United States v. Szabo*, 760 F.3d 997, 1001–02 (9th Cir. 2014) (internal citation omitted). The Supreme Court has repeatedly held that any expressive aspects of a defendant's speech are not protected under the First Amendment when they are "integral to criminal conduct." *Osinger*, 753

---

[4] All references to a "Rule" or the "Rules" in this order refer to the Federal Rules of Criminal Procedure.

F.3d at 947; *see e.g.*, *Gibony v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949) (speech and writing "used as an integral part of conduct in violation of a valid criminal statute" is not protected by the First Amendment). For example, speech used to commit blackmail and extortion, such as threats that the speaker will say or do something unpleasant unless the victim takes, or refrains from taking, certain action, is not constitutionally protected. *Planned Parenthood of Columbia / Willamette, Inc. v. Am. Coal. of Life Activists*, 244 F.3d 1007, 1015 n.8 (9th Cir. 2001), *aff'd in part, rev'd in part on r'hg en banc*, 290 F.3d 1058 (9th Cir. 2002).

## II. ANALYSIS AND DECISION

### A. RICO is not Overbroad Under the First Amendment

It is well-established that a person to whom a statute may be constitutionally applied cannot challenge that statute on the basis that it could conceivably be applied unconstitutionally to others in situations not before the court. *New York v. Ferber*, 458 U.S. 747, 767 (1982); *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973). This rule is based on two cardinal principles of constitutional law. *Ferber*, 458 U.S. at 768. First, constitutional rights are personal in nature. *Id.* Second, Article III of the Constitution limits the jurisdiction of the federal courts to actual cases and controversies. *Id*. This means the court must not anticipate a question of constitutional law in advance of the necessity of deciding it, or formulate a rule of constitutional law broader than required by the precise facts to which the rule will be applied. *Id*. at 768 n.20.

However, when First Amendment rights are implicated, the Supreme Court has carved out an exception to allow constitutional overbreadth challenges even when the challenger's conduct may be legitimately regulated under a statute. "Under the doctrine of First Amendment overbreadth, a litigant may mount a facial attack on a statute that restricts protected speech even if the litigant's own speech is unprotected." *Turney v. Pugh*, 400 F.3d 1197, 1200 (9th Cir. 2005). The First Amendment overbreadth doctrine is based on the weighty countervailing policy that constitutionally-protected speech could be chilled by the fear of criminal sanctions. *Ferber*, 458 U.S. at 768. For this reason, the Supreme Court has allowed challenges to overly broad statutes even though the conduct of the person challenging the statute "is clearly unprotected and could be proscribed by a law drawn with the requisite specificity." *Id*. at 769 (citations omitted). However,

the Supreme Court has made clear that the First Amendment overbreadth doctrine is "strong medicine" only used as a last resort where a statute implicates a "substantial" amount of protected expression. *United States v. Williams*, 553 U.S. 285, 292 (2008); *United States v. Stevens*, 559 U.S. 460, 472 (2010) ("[A] law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.") (quotation omitted)).

Particularly where "conduct and not merely speech is involved," a statute's overbreadth must be real and substantial. *Ferber*, 458 U.S. at 770; *Turney*, 400 F.3d at 1200 ("The overbreadth must be substantial in order for the statute to be invalidated on its face; the fact that a court may conceive of a single impermissible application is insufficient to justify striking down the law."). Criminal and civil sanctions having some incidental effect on First Amendment activities are subject to First Amendment scrutiny " ' only where it was conduct with a significant expressive element that drew the legal remedy in the first place," …or " 'a statute based on a nonexpressive activity has the inevitable effect of singling out those engaged in expressive activity'." *Alexander v. United States*, 509 U.S. 544, 557 (1993) (quoting *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706–07 (1986) (concluding that the First Amendment was not implicated by enforcement of a public health regulation of general application against physical premises in which respondents happened to sell books)). When a law "is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)," an overbreadth challenge will "rarely succeed." *Osinger*, 753 F.3d at 944 (quoting *United States v. Petrovic*, 701 F.3d 849, 856 (8th Cir. 2012)).

In deciding whether a federal statute is overbroad, the court must construe the statute to avoid constitutional problems if the statute is subject to a limiting construction. *Ferber*, 458 U.S. at 769 n.24. A federal statute should not be stricken down on its face if the invalid portion is severable from the remainder of the statute, even if the statute is not subject to a narrowing construction and is impermissibly overbroad. *Id.* (citing *United States v. Thirty-Seven Photographs*, 402 U.S. 363 (1971)). Rather, where an overbroad law is severable, only the unconstitutional portion should be declared invalid. *Id*. The Supreme Court has declined to strike

7

down a statute on its face where there were a substantial number of situations to which it might be validly applied. *Parker v. Levy*, 417 U.S. 733, 760 (1974). Thus, even if there are marginal applications in which a statute would infringe on speech protected by the First Amendment, a court should not declare the statute facially invalid if it also covers a range of easily identifiable conduct that may be constitutionally proscribed. *Id.*

RICO is not a content-based regulation of speech or expressive conduct. Although certain predicate offense may implicate First Amendment rights, RICO "does not criminalize constitutionally protected speech." *Alexander*, 509 U.S. at 555. Leopard attempts to distinguish this finding by pointing out that *Alexander* involved RICO forfeiture based on predicate offenses involving obscenity, not "cyberfraud."[5] Reply at 2. He claims the petitioner's "true argument" in *Alexander* was that applying RICO's forfeiture provisions to businesses dealing in "expressive materials" may have an improper "chilling" effect on free speech. *Id*. The Supreme Court acknowledged that a large monetary forfeiture "may induce cautious booksellers to practice self-censorship" out of fear that certain materials "could be found obscene and thus subject them to forfeiture." *Id.* at 555–56. However, the Court expressly rejected the overbreadth argument:

> petitioner's position boils down to this: Stiff criminal penalties for obscenity offenses are consistent with the First Amendment; so is the forfeiture of expressive materials as punishment for criminal conduct; but the combination of the two somehow results in a violation of the First Amendment. We reject this counterintuitive conclusion, which in effect would say that the whole is greater than the sum of the parts.

*Id.* at 557–58 (citing *Fort Wayne Books*, 489 U.S. at 58–60; *Arcara*, 478 U.S. at 706–07 (concluding that the First Amendment was not implicated by enforcement of a public health regulation of general application against physical premises where respondents happened to sell books)).

Applying *Alexander*'s rationale here, the court finds no First Amendment violation. Leopard does not claim the cyberfraud predicates are overbroad, thus, violating the First

---

[5] Count one alleges racketeering acts indictable under 18 U.S.C. § 1028 (fraud related to identification documents, authentication features, and information), § 1029 (access device fraud), § 1343 (wire fraud), § 1344 (bank fraud), and § 1543 (forgery or false use of passport). For brevity and clarity, the court will adopt Leopard's description of these predicates as "cyberfraud."

1 Amendment. Because it is undisputed that cyberfraud may be proscribed consistent with the First
2 Amendment, even though the prohibited conduct has expressive elements, the same is true for
3 RICO conspiracy committed through cyberfraud. *See id.* at 557. Although the threat of a RICO
4 conspiracy charge may have a chilling effect on a person engaged in a web-hosting business, it is
5 no more than the threat of jail time or a fine for the cyberfraud predicates. *See id.* at 556 (finding
6 that a threat of RICO forfeiture "has no more of a chilling effect on free expression than the threat
7 of a prison term or a large fine" for obscenity offenses). Section 1962(d) is not unconstitutionally
8 overbroad or as applied.

### B. RICO is not Unconstitutionally Vague

The Due Process Clause of the Fifth Amendment provides that no person shall be deprived of life, liberty, or property, without due process of law. U.S. Const. amend. V; *see also Valenzuela Gallardo v. Lynch*, 818 F.3d 808, 819 (9th Cir. 2016) (quoting *Johnson v. United States*, --- U.S. ----, 135 S. Ct. 2551, 2556 (2015)). The Due Process Clause requires that a criminal law provide the kind of notice that will enable ordinary people to understand what the law prohibits. *Id.*; *Sessions v. Dimaya*, --- U.S. ----, 138 S. Ct. 1204, 1212 (2018) (noting that the void-for-vagueness doctrine "guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes"). For statutes involving criminal sanctions, "the requirement for clarity is enhanced." *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013). "The prohibition of vagueness in criminal statutes is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law, and a statute that flouts it violates the first essential of due process." *Valenzuela Gallardo*, 818 F.3d at 819 (quoting *Johnson*, 135 S. Ct. at 2556–57) (internal bracketing omitted). However, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Williams*, 553 U.S. at 304.

A criminal statute is unconstitutionally vague "if it is not sufficiently clear to provide guidance to citizens concerning how they can avoid violating it and to provide authorities with principles governing enforcement." *United States v. Chhun*, 744 F.3d 1110, 1117 (9th Cir. 2014) (quoting *Harris*, 705 F.3d at 932). The Ninth Circuit has recognized three reasons for invalidating vague statutes: "(1) to avoid punishing people for behavior that they could not have known was

illegal; (2) to avoid subjective enforcement of laws based on arbitrary and discriminatory enforcement by government officers; and (3) to avoid any chilling effect on the exercise of First Amendment freedoms." *Osinger*, 753 F.3d at 945.

In general, the First Amendment prohibits the government from restricting expression because of its message, ideas, subject matter, or content. *United States v. Alvarez*, 567 U.S. 709, 716 (2012). Content-based restrictions on speech are presumed invalid, and the government bears the burden of showing they are constitutional. *Id*. at 716–17. However, the government may restrict some speech without violating the First Amendment. *Id.* at 722. From 1791 to the present, the Supreme Court has upheld content-based restrictions on speech based on an ad hoc balancing of relative social costs and benefits in a limited number of situations. *Id*. at 717. Content-based restrictions on speech have been permitted for a "few historic and traditional categories of expression," including: incitement to imminent lawless actions, obscenity, defamation, so-called "fighting words," true threats, child pornography, fraud, speech integral to criminal conduct, and speech presenting some grave and imminent threat the government has the power to prevent. *Id*. at 717–78 (collecting cases) (internal punctuation and citation omitted).

The Ninth Circuit has explicitly rejected Leopard's argument that RICO is vague on its face or as applied. *United States v. Mason*, 26 F.3d 134 (9th Cir. 1994) (noting that constitutional challenges to RICO "have been consistently rejected in a variety of circumstances by the Ninth Circuit and by all other Circuits that have considered the issue"); *United States v. Blinder*, 10 F.3d 1468, 1475 (9th Cir. 1993); *United States v. Freeman*, 6 F.3d 586, 597–98 (9th Cir. 1993); *United States v. Dischner*, 974 F.2d 1502, 1508–10 (9th Cir. 1992). In each case, the Ninth Circuit found that RICO provided fair and adequate notice to defendants that their conduct fell within RICO's prohibitions, rendering the vagueness challenges without merit. Leopard does not raise a legitimate basis for distinguishing his vagueness challenge; thus, the Ninth Circuit's precedent precludes a finding that § 1962(d) is vague.

Additionally, the court finds the definitions of "conduct," "enterprise," and "pattern of racketeering activity" are not vague. *See, e.g.*, *Mason*, 26 F.3d 134 (rejecting contention that RICO failed "to give fair and adequate notice of the type of conduct prohibited because of a lack of clarity

in the meaning of the word 'pattern' "). These words and phrases are not legal terms of art; rather, they are defined in RICO. Ordinary citizens can readily understand their meaning. A reasonable person would have no difficulty recognizing what conduct RICO prohibits, therefore, § 1964(d) is not void for vagueness on its face.

Finally, § 1964(d) is not void for vagueness as applied to Leopard. Accepting the allegations in the Infraud indictment as true, Leopard is charged with intentionally conspiring to violate § 1962(c) by participating in a pattern of racketeering activity. The pattern of racketeering activity is alleged to include 117 racketeering acts involving cyberfraud. ECF No. 303 at 22–39. RICO placed defendants on adequate notice that their conduct carried criminal penalties.

Having reviewed and considered the matter,

**IT IS ORDERED** that defendants' Motions for Joinder (ECF Nos. 478, 479, 480, 481, 482, 487) are **GRANTED.**

**IT IS RECOMMENDED** that Leopard's Motion to Dismiss Count One as Unconstitutionally Overbroad and/or Vague (ECF No. 471) be **DENIED**.

DATED this 8th day of April 2019.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

11