1
2
3
4
5
6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

7    UNITED STATES OF AMERICA,                    Case No. 2:17-cr-00306-JCM-PAL

8                                Plaintiff,       **ORDER**
                                                  **- AND -**
9         v.                                      **REPORT OF FINDINGS AND**
                                                  **RECOMMENDATION**
10   JOHN TELUSMA,

11                               Defendant.       (Mots. to Dismiss – ECF Nos. 469, 476)

12        Before the court is defendant John Telusma's ("Telusma") Motion to Dismiss Indictment

13   (ECF No. 476),[1] which was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and

14   LR IB 1-4 of the Local Rules of Practice.  The court has considered the motion, the government's

15   Opposition (ECF No. 501), and Telusma's Reply (ECF No. 509).  Defendants Frederick Thomas,

16   Valerian Chiochiu, Pius Wilson, Aldo Ymeraj, and Marko Leopard also filed Motions for Joinder

17   (ECF Nos. 477, 480, 481, 484, 486, 511).[2]

18                                    **BACKGROUND**

19   **I.    THE INFRAUD INDICTMENT**

20        Mr. Telusma (a.k.a. "John Westley Telusma," "Peterelliot," "Pete," "Pette") and 34 co-

21   defendants are charged in a Second Superseding Indictment (ECF No. 303) ("Infraud indictment")

22

---

23   [1]  Mr. Telusma initially filed a Motion to Dismiss (ECF No. 469) that improperly combined requests for
     two forms of relief: dismissal and suppression.  Clerk's Notice (ECF No. 470) (citing LR IC 2-2(b)).
24   Defense counsel therefore severed the requests and filed two separate motions.  Mot. to Suppress (ECF
     No. 475), Mot. to Dismiss (ECF No. 476).  The later filed motion to dismiss makes the same substantive
25   arguments as the earlier motion.  The court treats these motions as one-in-the same and will only refer to
     the later filed motion (ECF No. 476).
26
     [2]  Defendant Pius Wilson filed an omnibus Motion for Joinder (ECF No. 481) seeking to adopt the motions
27   of his co-defendants to the extent any motion is applicable to him.  The current motion involves a legal
     question about the racketeering conspiracy count, which also charges Wilson.  The court grants Wilson's
28   joinder motion as to those arguments.

returned January 30, 2018.[3]  This case arises out of allegations that the defendants operated a criminal organization known as the "Infraud Organization" ("Infraud") in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. Defendants allegedly engaged in identity theft and financial fraud with acts that include, but are not limited to, money laundering, trafficking in stolen means of identification; trafficking in, production and use of counterfeit identification; identity theft; trafficking in, production and use of unauthorized and counterfeit access devices; bank fraud; and wire fraud, as well as services in connection with all of those acts.  *Id.* at 6, ¶ 1.

Telusma is accused of being a "vendor," providing "drop" services for other Infraud members as well as selling dumps.  *Id.* at 16.  "Vendors" (a.k.a. "Professors" or "Doctors") allegedly sold illicit products and services to other Infraud members:

> These sales may occur through the vendor's own website, to which would-be purchasers are directed by the advertisements they pay for and place on the Infraud Organization's web forum.  Such sales may also occur directly between the vendor and customer, i.e. via email, [private message "PM"], or [instant messaging electronic communication service ("ICQ") or "chat"].  Products sold by vendors are reviewed on the forum by Infraud members, to ensure that vendors of low-quality goods do not remain in business with the Organization.  This helps to cement the Organization's reputation as a premiere online destination for safe, high-quality and readily-available fraud-related contraband.

*Id.* at 13, ¶ 6.d.[4]

Mr. Telusma is charged in count one with racketeering conspiracy in violation of 18 U.S.C. § 1962(d).  Count one alleges the defendants were employed by and associated with the Infraud "enterprise" and knowingly conspired to violate § 1962(c) by participating in a pattern of racketeering activity consisting of multiple acts indictable under 18 U.S.C. § 1028 (fraud and related activity in connection with identification documents, authentication features, and information), § 1029 (access device fraud), § 1343 (fraud by wire, radio, or television), § 1344 (bank fraud), and § 1543 (forgery or false use of passport).  ECF No. 303 at 24, ¶ 12.  With regard

---

[3]  A total of 36 defendants were named in the Infraud indictment.  One defendant has been dismissed.

[4]  Among other things, vendors allegedly sold "dumps," which refers to compromised credit card account data, including an account holder's name, date of birth, social security number, address, telephone number, and mother's maiden name, as well as the security code on the back of the credit card.  *Id.* at 8, ¶ 3.e–f.  The term "drops" generally refers to protected drop sites, *i.e.*, a location or individual able to securely receive and then forward retail items obtained via fraud.  *Id.* ¶ 3.g.

to overt racketeering acts, Telusma is accused as follows:

> 14.24    On or about August 18, 2011, **Telusma [16]** received in excess of 15 compromised credit card numbers from **Unindicted Co-conspirator A**….
>
> 14.28    On or about September 15, 2011, **Unindicted Co-conspirator A** sent **Telusma [16]** in excess of 15 compromised credit card dumps via email….
>
> 14.109   On or about March 26, 2015, **Telusma [16]** requested via private message that **Bondarenko [1]** ban another Infraud member for "ripping" him on a deal.

*Id.* at 28, 37.

## II.    THE PARTIES' POSITIONS

### A.  Telusma's Motion to Dismiss (ECF No. 476)

The motion asserts that the RICO conspiracy charge alleged in count one does not state facts sufficient to constitute an offense under Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure.[5]   To adequately plead a RICO enterprise, the government must establish that all members of an association-in-fact enterprise act with a "common purpose." Telusma argues that count one improperly attempts to join "far-flung defendants allegedly committing disparate crimes under a single RICO umbrella." *Id.* at 3.  By lumping together tangentially-related defendants in a single RICO conspiracy, the Infraud indictment is overly broad and conspiratorial liability cannot attach to the so-called "vendors."

The motion contends that vendors, like Telusma, did not "conduct" the affairs of the Infraud enterprise.[6]   To conduct an enterprise's affairs, pursuant to 18 U.S.C. § 1962(c), a RICO defendant must play "*some* part in directing the enterprise's affairs," *i.e.*, a role in its management and operation.  Mot. at 6–7.  Telusma acknowledges that the Infraud indictment charges RICO conspiracy under § 1962(d), rather than a substantive violation under § 1962(c).  RICO conspiracy does not require that a "defendant have actually conspired to operate or manage the enterprise herself" or himself.  *United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004).  However, Telusma asserts that a RICO conspirator must still *facilitate* the enterprise's operation, and the

---

[5]  All references to a "Rule" or the "Rules" in this order refer to the Federal Rules of Criminal Procedure.

[6]  RICO prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, *to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs* through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c) (emphasis added).  Defendants are accused of RICO *conspiracy* under § 1962(d), not a substantive violation of RICO under § 1962(c).

vendors' alleged conduct fails to meet this standard.

Mr. Telusma further argues that the Infraud indictment does not adequately plead a RICO enterprise. Although the "concept of an association in fact is expansive," it is not limitless. *Boyle v. United States*, 556 U.S. 938, 944, 946 (2009) (requiring, among other things, a common "purpose" amongst the enterprise's associates). The Infraud indictment does not allege that vendors had any agreements or mutual expectations of reciprocal behavior with those who conducted the affairs of Infraud. Vendors purportedly engaged in a series of isolated transactions without coordination of effort; thus, they did not act with a common purpose. "Vendors entered and left the forum depending on whether they had goods or services to sell and each sale of 'compromised' financial information rose or fell on its own 'merits'." Mot. at 13. Although Telusma does not suggest that no Infraud members had a common purpose, he asserts that the class of individuals accused as vendors cannot be characterized as members of that enterprise as a matter of law. Count one should therefore be dismissed.

In a footnote, Telusma also argues that a bill of particulars is necessary to prepare his defense. *Id.* at 9 n.3. Overt act 14.24 alleges that Telusma "received" compromised credit card, and overt act 14.28 alleges that he was "sent" compromised credit card numbers. He claims the usage of two different terms invites speculation as to whether the conduct was different. Overt acts 14.24 and 14.28 also refer to "compromised" credit card information, but the term is not defined. Given the "highly technical terms" used in the Infraud indictment, Telusma claims the lack of specificity diminishes his ability to understand the charges against him. *Id.* Thus, he asks the court for a bill of particulars pursuant to Rule 7(f): "(1) clarifying whether there is some distinction between having "received" compromised credit cards and having been "sent" compromised credit cards; and (2) as it relates to Overt Acts 14.24 and 14.28, clarifying what about the credit cards rendered them 'compromised'." *Id.*

### B. The Government's Response (ECF No. 501)

In its response, the government claims the motion improperly asks the court to look beyond the four corners of the Infraud indictment rather than accepting its allegations as true. The response maintains that a RICO enterprise is properly pled. The Infraud indictment alleges that Infraud had

at least six common purposes:

> (a) to enrich the members and associates of the Organization; (b) to establish the Organization as the premier online destination for the purchase and sale of stolen property and other contraband; (c) to "educate" members in obtaining and using such property and contraband; (d) to direct traffic to the automated vending sites operated by its Vendors; (e) to protect the Organization and its members from apprehension by law enforcement; and (f) to preserve and protect the reputation, operations, and profits of the Organization by disciplining "non-conforming members."

*Id.* at 6–7 (citing ECF No. 303 at 19–20). By implicitly acknowledging that "at least *some* Infraud members shared a common purpose," the government argues that Telusma "essentially concedes the *existence* of an enterprise" but "denies that he was a *part* of that enterprise." *Id.* at 7. The question of whether any given defendant shared the purpose of Infraud should not factor into the court's analysis. This fact-based argument may be advanced in a motion for a judgment of acquittal, or to the jury in closing arguments, but the court should not consider it before the presentation of evidence at trial.

In addition, the response asserts the Infraud indictment adequately pleads that Telusma conspired to conduct or participate in the conduct of Infraud's affairs. It is well settled that a defendant may be liable for a conspiracy to violate a law even if he may not be liable for a substantive violation. The Supreme Court applied this principle to RICO conspiracy in *Salinas v. United States*, 522 U.S. 52, 61–65 (1997) (holding that a defendant may be liable for RICO conspiracy even if he did not himself commit or agree to commit at least two racketeering acts). As applied here, Telusma need not have directed Infraud's affairs if he "agreed (conspired) that *someone else* would do so through a pattern of racketeering activity." Resp. at 10. The government claims the Infraud indictment adequately alleges that Telusma and other vendors facilitated Infraud's operation. Vendors "were essential to carrying out the group's core purposes" by (i) enabling the purchase and sale of fraud-related products like stolen credit cards and personally-identifying information, (ii) driving traffic to the Infraud forum, (iii) paying for advertisements that enriched Infraud's administrators, (iv) submitting themselves to vetting and approval by Infraud's leadership, and (v) following Infraud's rules or face discipline or expulsion. *Id.* at 11 (citing ECF No. 303 at 13–14). Mr. Telusma's specific role as a vendor of "drops" and "cashout"

services "played a special role in facilitating the criminal acts of other Infraud members," providing Infraud "members with vehicles to launder the goods received via their illegal activity." *Id.* (citing ECF No. 303 at 16). As such, the Infraud indictment sufficiently alleges that Telusma agreed to facilitate Infraud's crimes, and dismissal is not appropriate.

The government further argues that Telusma is not entitled to a bill of particulars. Rule 7(f) generally allows a defendant to move for a bill of particulars within 14 days after arraignment. His request is well outside that time frame. The government claims the 49-page Infraud indictment sufficiently advises Telusma of the allegations against him. The Infraud indictment provides 39 pages of considerable detail on the alleged RICO conspiracy. Additionally, the government provided voluminous discovery, including eleven volumes in four separate productions with individual folders containing information about each overt act alleged. Discovery also included a "reverse proffer" session in which the prosecution team walked defense counsel through all of the evidence against his client. Thus, the court should deny his request.

**C. The Reply (ECF No. 509)**

In his reply, Mr. Telusma maintains the government's allegations are insufficient and incomplete as they relate to vendors and him in particular. He claims the response and Infraud indictment fail to demonstrate how vendors such as Telusma shared a common purpose with the "Administrators" and "Super Moderators" who purportedly ran the Infraud forum. Rather, the allegations describe a group of leaders who administered "a web forum on which illegal activity is alleged to have occurred via a group of independent and anonymous Vendors who were able to freely enter and leave the forum at their discretion." *Id.* at 4. The absence of continuity and permanence precludes an inference that vendors shared a common purpose with Infraud's leaders or with each other.

Telusma also asserts that he cannot be held criminally responsible under RICO because he did not "facilitate" Infraud's operations. The parties disagree about what it means to facilitate a RICO enterprise. Because Telusma believes a "common purpose" was not properly alleged, he asserts that the government also failed to properly allege facilitation. The government's discussion of what the vendors *did* is not nearly as important as its failure to articulate *why* the vendors

1    engaged in the conduct alleged, *i.e.*, "whether they undertook the alleged conduct because they

2    shared a common purpose with the Infraud organizers or, by contrast, whether they undertook

3    independent action that lacked an ongoing and unified purpose with such organizers." *Id.* at 7.

4        Lastly, Telusma reiterates his request for a bill of particulars. The phrase "compromised"

5    is not defined anywhere in the Infraud indictment and could mean: (1) valid credit card numbers

6    that were stolen without the knowledge of the true owner; (2) valid credit card numbers obtained

7    legally (such as through a legitimate store purchase) but distributed without the consent of the true

8    owner; (3) fake credit card numbers; or (4) something else. *Id.* at 7–8. The burden on the

9    government will be minimal to produce a bill of particulars clarifying whether there is a distinction

10   between the two overt acts alleged: that Telusma "received" or was "sent" compromised credit

11   card information. Because of the sheer volume of discovery and various technical issues

12   encountered, Telusma asserts that this "is one of the rare examples where full discovery

13   exacerbates, and does not obviate, the need for a bill of particulars." *Id.* at 8 n.6.

14                                  **DISCUSSION**

15   **I.    THE INFRAUD INDICTMENT SUFFICIENTLY ALLEGES A RICO CONSPIRACY**

16       **A.  Applicable Legal Standards**

17           1.  Motions to Dismiss

18       Pursuant to Rule 12, a "party may raise by pretrial motion any defense, objection, or request

19   that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Rule 12(b)(3)

20   specifies the motions which must be made before trial. Among them is a motion to dismiss for

21   failure to state an offense. Fed. R. Crim. P. 12(b)(3)(v). "A motion to dismiss is generally capable

22   of determination before trial if it involves questions of law rather than fact." *United States v. Kelly*,

23   874 F.3d 1037, 1046 (9th Cir. 2017). The court's inquiry must end there. Arguments directed at

24   the merits of the charges must be left for trial.

25       In ruling on a pretrial motion to dismiss, "the district court is bound by the four corners of

26   the indictment." *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014); *United States v. Boren*,

27   278 F.3d 911, 914 (9th Cir. 2002). The court "cannot consider evidence that does not appear on

28   the face of the indictment." *Kelly*, 874 F.3d at 1046 (citing *Lyle*, 742 F.3d at 436; *United States v.*

1   *Jensen*, 93 F.3d 667, 669 (9th Cir. 1996)).  In determining whether a cognizable offense has been

2   charged, the court does not consider whether the government can *prove* its case, only whether

3   accepting the facts as alleged in the indictment as true, a crime has been alleged.  *United States v.*

4   *Milovanovic*, 678 F.3d 713, 717 (9th Cir. 2012).  Rule 12 motions cannot be used to determine

5   "general issues of guilt or innocence," which "helps ensure that the respective provinces of the

6   judge and jury are respected."  *Boren*, 278 F.3d at 914 (citation omitted).  However, the court may

7   dismiss an indictment if "it fails to recite an essential element of the charged offense."  *United*

8   *States v. Ezeta*, 752 F.3d 1182, 1184 (9th Cir. 2014).

9                    2.  <u>Sufficiency of an Indictment</u>

10      Rule 7 requires that an indictment be a "plain, concise and definite written statement of the

11  essential facts constituting the offense charged."  *United States v. Forrester*, 616 F.3d 929, 940

12  (9th Cir. 2010) (quoting Fed. R. Crim. P. 7(c)(1)).  An indictment is constitutionally sufficient if

13  it (1) contains the essential elements of the charged offense and fairly informs the accused of the

14  charges to be defended against, and (2) enables the accused to plead an acquittal or conviction as

15  a bar against double jeopardy for any subsequent prosecution.  *United States v. Resendiz-Ponce*,

16  549 U.S. 102, 108 (2007) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)); *United*

17  *States v. Hill*, 279 F.3d 731, 741 (9th Cir. 2002).  "An indictment which tracks the words of the

18  statute charging the offense is sufficient so long as the words unambiguously set forth all elements

19  necessary to constitute the offense."  *United States v. Givens*, 767 F.2d 574, 584 (9th Cir. 1985)

20  (citing *Hamling*, 418 U.S. at 117); *Resendiz-Ponce*, 549 U.S. at 109 (noting that "an indictment

21  parroting the language of a federal criminal statute is often sufficient").  This means an indictment

22  can be sufficient despite conclusory legal allegations.  *Id.*

23      The test of an indictment's sufficiency "is not whether it could have been framed in a more

24  satisfactory manner, but whether it conforms to minimal constitutional standards."  *United States*

25  *v. Livingston*, 725 F.3d 1141, 1146–47 (9th Cir. 2013).  The Ninth Circuit has held:

26          An indictment will withstand a motion to dismiss "if it contains the elements of the
            charged offense in sufficient detail (1) to enable the defendant to prepare his
27          defense; (2) to ensure him that he is being prosecuted on the basis of the facts
            presented to the grand jury; (3) to enable him to plead double jeopardy; and (4) to
28

inform the court of the alleged facts so that it can determine the sufficiency of the charge."

*United States v. Rosi*, 27 F.3d 409, 414 (9th Cir. 1994) (quotation omitted). The sufficiency of an indictment is determined by "whether the indictment adequately alleges the elements of the offense and fairly informs the defendant of the charge, not whether the government can prove its case." *United States v. Blinder*, 10 F.3d 1468, 1471 (9th Cir. 1993). The court will look at the indictment "as a whole, include facts which are necessarily implied, and construe it according to common sense." *United States v. Kaplan*, 836 F.3d 1199, 1216 (9th Cir. 2016).

### B. Analysis and Decision

Applying well established law interpreting Rule 12(b), the court examined the Infraud indictment in its entirety, accepted the facts alleged as true, and finds that it complies with the requirements set forth by Supreme Court and Ninth Circuit precedent. Mr. Telusma argues the Infraud indictment fails to plead that vendors had a "common purpose" with Infraud's leaders or with each other, and without a common purpose, vendors could not facilitate Infraud's affairs. The Infraud indictment belies this argument as it clearly pleads the "purposes of the enterprise include, but are not limited to":

> a. To enrich the members and associates of the Infraud Organization through the unlawful trafficking in: counterfeit and illegal means of identification, document-making implements, counterfeit identification documents, device-making equipment, and unauthorized and counterfeit access devices to include stolen credit card numbers;
>
> b. To establish the Organization as the premier online destination for the purchase and sale of stolen property and other contraband, such as victims' personal and financial means of identification, and forged identification documents;
>
> c. To "educate" members in obtaining and using such property and contraband;
>
> d. To direct traffic, primarily through advertising, to member-owned and/or operated AVSes and other websites to generate illicit proceeds, and to thereby promote the Infraud Organization as the premier online source of "reputable" vendors and high-quality contraband.
>
> e. To protect the enterprise and its members from detection, apprehension and prosecution by law enforcement; and
>
> f. To preserve and protect the reputation, operations and profits of the enterprise through discipline, expulsion, and other acts of retribution against non-conforming members.

ECF No. 303 at 19–20, ¶ 9. These allegations are not conclusory or ambiguous. Accepting the allegations as true, the Infraud indictment alleges a "common purpose" amongst all individuals in

the Infraud hierarchy.  As the government points out, Telusma implicitly acknowledges that some Infraud members shared a common purpose, but contends that vendors (and Telusma specifically) did not share the common purpose.  The court must accept the allegations of the indictment and may not go outside the four corners of the Infraud indictment or weigh evidence in determining a pretrial motion to dismiss.

The Infraud indictment sufficiently alleges that Telusma facilitated Infraud's operation in accordance with *Boyle*, 556 U.S. at 944–46, and *Fernandez*, 388 F.3d at 1230.  Vendors such as Telusma allegedly facilitated Infraud's operation by (i) enabling the purchase and sale of fraud-related products like stolen credit cards and personally-identifying information, (ii) driving traffic to the Infraud forum, (iii) paying for advertisements that enriched Infraud's administrators, (iv) submitting themselves to vetting and approval by Infraud's leadership, and (v) following Infraud's rules or face discipline or expulsion.  ECF No. 303 at 13–14.  In particular,  overt racketeering act 14.109 alleges that Telusma asked an Infraud administrator to ban another member for "ripping" him on a deal.  *Id.* at 37.  Reading the Infraud indictment as a whole, a reasonable jury could find that Telusma's conduct facilitated a goal to preserve and protect Infraud's "reputation, operations and profits" by requesting that a non-conforming member be expelled for "ripping" him on a deal.  *Compare id.* at 20, ¶ 9, *with id.* at 37, ¶ 14.109.

The RICO conspiracy count contains the elements of the charged offense, enables defendants to prepare defenses, to plead double jeopardy, and informs the court of the alleged facts so that it can determine the sufficiency of the charge.  Accordingly, the court will recommend that Telusma's motion be denied.

### III.    MR. TELUSMA'S REQUEST FOR A BILL OF PARTICULARS

Rule 7 addresses a defendant's request for a bill of particulars.  Fed. R. Crim. P. 7(f).  The Local Rules of Criminal Practice require a defendant to file a motion for bill of particulars within 30 days from the arraignment unless the court orders otherwise.  LCR 12-1.  The decision of whether or not to grant a motion for a bill of particulars is committed to the discretion of the trial court.  *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983).

The purpose of a bill of particulars is "to minimize the danger of surprise at trial and to

provide sufficient information on the nature of the charges to allow preparation of a defense." *United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984). The Ninth Circuit has recognized that a bill of particulars has three functions:

> [1] to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, [2] to avoid or minimize the danger of surprise at the time of trial, and [3] to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, and indefinite for such purposes.

*United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979) (quotation omitted). The function and purpose of the bill of particulars is served when "the indictment itself provides sufficient details of the charges and if the Government provides full discovery to the defense." *Mitchell*, 744 F.2d at 705. The court "should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government." *Long*, 706 F.2d at 1054 (citing *Giese*, 597 F.2d at 1180). A meritorious motion should specify any prejudice or surprise that would result from the denial of his request for a bill of particulars. *United States v. DiCesare*, 765 F.2d 890, 898 (9th Cir. 1985).

The Ninth Circuit has expressly held that a bill of particulars is not required to identify exact details sought by defendants. *Id.* at 897–98. A "defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved." *United States v. Grace*, 401 F. Supp. 2d 1103, 1107 (D. Mont. 2005) (citing *United States v. Kendall*, 665 F.2d 126, 135 (9th Cir. 1981)). Evidentiary details such as the who, what, when, where and why of the crimes alleged fall within the scope of discovery and do not warrant a bill of particulars. *United States v. Ellis*, 121 F. Supp. 3d 927, 941 (N.D. Cal. 2015). Additionally, the "government is not required to disclose its theory of liability as to each defendant in a bill of particulars, as long as full discovery is provided to the defense." *Id.* at 942. "Full discovery 'obviates the need for a bill of particulars'." *Id.* at 941 (quoting *Giese*, 597 F.2d at 1180).

Mr. Telusma's motion is untimely. He was arraigned March 21, 2018, on the Infraud indictment. *See* Mins. (ECF No. 349). He did not seek, and the court did not grant, leave to file a motion for bill of particulars more than 10 months after his arraignment. Therefore, denial of the motion is appropriate on this basis alone. However, the motion should also be denied on its merits.

The language of the Infraud indictment is detailed and clear, and when read as a whole, it sufficiently informs Telusma of the charges against him. Teluusma does not dispute that government counsel provided detailed discovery and a "reverse proffer" on the details of the government's case against him. Telusma claims the term "compromised" credit card information is undefined. However, the Infraud indictment informs the defendants:

> d. **"Carding"** refers to the general concept of purchasing retail items with counterfeit credit cards or stolen credit card information. Such scheme may involve a counterfeit credit card that has been encoded with the legitimate victim account information, and is presented to a store's cashier by the offender. Often, various false identification documents are used to facilitate this fraud….

> e. **"CVV"** and **"fulls"** refer to compromised credit card account data that typically contains all of a cardholder's information except for information encoded on the magnetic track on the rear of the card. This account data generally includes an account holder's name, date of birth, social security number, address, telephone and mother's maiden name, as well as the security code on the rear of the credit card.

> f. **"Dumps"** are compromised credit card account data.

ECF No. 303 at 7–8, ¶ 3.d–f.

Additionally, no clarification is required for the two overt acts alleged:

> 14.24 On or about August 18, 2011, **Telusma [16]** received in excess of 15 compromised credit card numbers from **Unindicted Co-conspirator A**….

> 14.28 On or about September 15, 2011, **Unindicted Co-conspirator A** sent **Telusma [16]** in excess of 15 compromised credit card dumps via email….

*Id.* at 28. It is obvious from the Infraud indictment that these paragraphs allege the same type of conduct, stated slightly differently.

Ironically, Telusma argues that because discovery in this matter is voluminous the sheer volume of data and the technical issues makes this "one of the rare examples where discovery exacerbates, and does not obviate, the need for a bill of particulars." Reply at 8 n.6. Telusma does not dispute that defense counsel participated in a reverse proffer session in which the prosecution team went through the evidence against Telusma and defense counsel took advantage of the opportunity to ask the prosecution team questions about the evidence. Under these circumstances, the court is not persuaded by his arguments that he had too much information to be able to adequately understand the nature of the charges against him.

/ / /

1    The court concludes that the Infraud indictment sufficiently informs the Telusma of the

2  nature of the charges to allow him to prepare his defense, avoid any unfair surprise at trial, and

3  plead double jeopardy in any subsequent prosecution.  For the foregoing reasons, Telusma's

4  request for a bill of particulars is denied.

5    Having reviewed and considered the matter,

6    **IT IS ORDERED:**

7    1.  Defendants Frederick Thomas, Valerian Chiochiu, Pius Wilson, Aldo Ymeraj, and

8       Marko Leopard's Motions for Joinder (ECF Nos. 477, 480, 481, 484, 486, 511) are

9       **GRANTED**.

10   2.  Defendant John Telusma's request for bill of particulars is **DENIED**.

11   **IT IS RECOMMENDED** that Telusma's Motion to Dismiss (ECF No. 476) be **DENIED**.

12   DATED this 11th day of April 2019.

14
15   PEGGY A. LEEN
     UNITED STATES MAGISTRATE JUDGE